# In the United States Court of Federal Claims

No. 14-331C
(Filed:  April 28, 2015)

| | |
|---|---|
| FEDERAL EDUCATION ASSOCIATION, INC., et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>                Defendant. | Pay Freeze Act; Overseas Teachers Pay and Personnel Practices Act; Application of Pay Freeze Act after expiration; <u>Skidmore</u> deference |

*Richard J. Hirn*, Washington, DC, for plaintiffs.

*Phyllis Jo Baunach*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, Commercial Litigation Branch, and *Reginald T. Blades, Jr.*, Assistant Director.  *Kristine T. Bourgos*, Associate General Counsel, Labor and Employee Relations Attorney Advisor, Alexandria, VA, of counsel.

**O P I N I O N**

**FIRESTONE**, *Judge*.

This case arises from the pay freeze for teachers in overseas Department of

Defense Educational Activity ("DoDEA") schools, imposed by Congress as part of an

overall freeze of salaries for Federal employees from 2011 to 2013.  Pending before the

court are the Federal Education Association, Inc.'s ("FEA") motion for summary

judgment and defendant the United States's ("the government") motion for summary

judgment.[1]  Plaintiffs allege that the United States Office of Personnel Management ("OPM") erred by determining that the Pay Freeze Act ("PFA"), passed by Congress as part of the Continuing Appropriations and Surface Transportation Extensions Act of 2011, applied to overseas teachers whose pay is set pursuant to the Overseas Teachers Pay and Personnel Practices Act ("OTPPPA"), 20 U.S.C. §§ 901-907.  Plaintiffs argue that the OTPPPA is not among the statutes covered by the PFA and that, even if they were covered, the government erred by extending a freeze of their pay beyond the deadline set by the statute.  The government argues that Congress sought to apply the PFA broadly and that the President, through OPM, properly included overseas teachers in the pay freeze.  The government further argues that DoDEA's application of the pay freeze for overseas teachers beyond the pay freeze deadline was lawful in that the teachers were only subject to a pay freeze for 3 years, the same length of freeze as all other affected employees.  The extension of a pay freeze beyond the statutory deadline, the government argues, was necessary given the timing of the school year relative to the pay freeze period.  For the reasons that follow, the court agrees with the government that overseas teachers were subject to the pay freeze, but finds that the government erred in applying the pay freeze beyond the statutory period.

## I.    BACKGROUND

---

[1] Because the parties have submitted, and the court has considered, evidence outside of the pleadings, the court shall not address the government's motion to dismiss and deals solely with the parties' motions for summary judgment.  See Rule 12(d) of the Rules of the United States Court of Federal Claims.

### A.     Pay Rates for Overseas DoDEA Teachers

Salaries for overseas teachers employed by DoDEA are set by 20 U.S.C. § 903, which states:

> The Secretary of Defense shall fix the basic compensation for teachers and teaching positions in the Department of Defense at rates equal to the average of the range of rates of basic compensation for similar positions of a comparable level of duties and responsibilities in urban school jurisdictions in the United States of 100,000 or more population.

20 U.S.C. § 903.

The Secretary of Defense is given the authority to determine how to maintain the pay parity required by the OTPPPA.  20 U.S.C. § 902(a)(2).[2]  Initially, the Secretary collected data from representative districts for a school year, and then used that data to set a rate of pay for the following school year.  This procedure was challenged following a 1966 amendment on the grounds that this practice allowed salaries to lag behind those districts.  March v. United States, 506 F.2d 1306, 1315 (D.C. Cir. 1974).  The court

---

[2] The statute states:

> (a) Not later than the ninetieth day following July 17, 1959, the Secretary of Defense shall prescribe and issue regulations to carry out the purposes of this chapter. Such regulations shall govern—
>
> . . . .
>
> (2) the fixing of basic compensation for teachers and teaching positions at rates equal to the average of the range of rates of basic compensation for similar positions of a comparable level of duties and responsibilities in urban school jurisdictions in the United States of 100,000 or more population.

20 U.S.C. § 902(a).

agreed and the pay adjustments are now made retroactive to the beginning of the school year.[3]

During the time period at issue in this case, the DOD set teacher salaries by surveying urban school districts populations of 100,000 or more.  Hritz Decl. ¶ 3; Terhaar Decl. ¶ 8.  Until 2013, this included 231 school districts.  Id.  This number was recalculated following the 2010 census and expanded to 267 school districts.  Id.  The survey process occurs between November and January, after which DOD sets a pay rate for each category of DoDEA employee: teachers, guidance counselors, speech pathologists, and school psychologists.  Hritz Decl. ¶ 4; Terhaar Decl. ¶ 9.  These rates are then shared with the FEA, corrected if necessary, and published.  Hritz Decl. ¶¶ 5-8; Terhaar Decl. ¶ 9.  The effective date of the pay adjustment is August 1 of the previous year.  Terhaar Decl. ¶ 9.

## B.    The Pay Freeze

In December 2010, as part of the Continuing Appropriations and Surface Transportation Extension Act, Pub. L. No. 111-322, Congress passed the PFA, which prevented increases in salary for certain federal employees.  The Act provided, in relevant part:

(a)(1) the term 'employee'--

(A) means an employee as defined in section 2105 of title 5, United States Code; and

---

[3] According to the plaintiffs, this retroactive adjustment is carried out through a lump sum payment.

(B) includes an individual to whom subsection (b), (c), or (f) of such section 2105 pertains (whether or not such individual satisfies subparagraph (A));

. . . .

(b)(1) Notwithstanding any other provision of law, except as provided in subsection (e), no statutory pay adjustment which (but for this subsection) would otherwise take effect during the period beginning on January 1, 2011, and ending on December 31, 2012, shall be made.

(2) For purposes of this subsection, the term 'statutory pay adjustment' means--

(A) an adjustment required under section 5303, 5304, 5304a, 5318, or 5343(a) of title 5, United States Code; and

(B) any similar adjustment, required by statute, with respect to employees in an Executive agency.

(c) Notwithstanding any other provision of law, except as provided in subsection (e), during the period beginning on January 1, 2011, and ending on December 31, 2012, no senior executive or senior-level employee may receive an increase in his or her rate of basic pay absent a change of position that results in a substantial increase in responsibility, or a promotion.

(d) The President may issue guidance that Executive agencies shall apply in the implementation of this section.

(e) The Non-Foreign Area Retirement Equity Assurance Act of 2009 (5 U.S.C. 5304 note) shall be applied using the appropriate locality-based comparability payments established by the President as the applicable comparability payments in section 1914(2) and (3) of such Act.

Pub. L. No. 111-322 § 147, 124 Stat. 3518.  Thus, the Act explicitly froze increases pursuant to 5 U.S.C. §§ 5303, 5304, 5304a, 5318, and 5343(a), which together govern wage increases pursuant to the General Schedule.  In addition, it froze "any similar adjustment, required by statute, with respect to employees in an Executive agency."

The PFA also provided that the President may issue guidance that Executive

Agencies shall apply in the implementation of the act.  The President delegated that

responsibility to OPM in a memorandum issued on December 22, 2010, in which the

President stated:

> While this legislation will prevent adjustments in executive branch pay
> schedules that are made by statute, some laws allow such adjustments to be
> made by agency heads as an exercise of administrative discretion.  In order
> to ensure consistent treatment of executive branch employees and to
> promote the fiscal purposes of my original proposal, agency heads who
> have such discretion should not provide any upward adjustments in Federal
> employees' pay schedules or rates during the two-year period covered by
> the statutory pay freeze.
>
> The Director of [OPM] shall issue guidance on implementing this
> memorandum, and is hereby authorized and directed to publish this
> memorandum in the Federal Register.
>
> Accordingly, you should suspend any increases to any pay systems or pay
> schedules covering executive branch employees that could otherwise take
> effect as a result of an exercise of administrative discretion during the
> period beginning on January 1, 2011, and ending on December 31, 2012.
> You also should forgo any general increases (including general increases
> for a geographic area, such as locality pay) in covered employees' rates of
> pay that could otherwise take effect as a result of the exercise of
> administrative discretion during the same period. To the extent that an
> agency pay system provides performance-based increases in lieu of general
> increases, funds allocated for those performance-based increases should be
> correspondingly reduced to reflect the freezing of the employees' base pay
> schedule.

Memorandum for the Heads of Executive Departments and Agencies, 75 Fed. Reg.

81829 (Dec. 22, 2010).  On December 30, 2010, the Director of OPM issued the guidance

requested by the President.  In a memorandum, OPM stated:

**Covered Employees**

The pay freeze is expected to apply to approximately 2 million Federal civilian employees in the Executive branch. Employees of the United States Postal Service and the Postal Regulatory Commission are not covered, nor are members of the uniformed services (as defined in 37 U.S.C. 101(3), i.e., Army, Navy, Air Force, Marine Corps, Coast Guard, National Oceanic and Atmospheric Administration, and Public Health Service). Covered employees include employees under the General Schedule, Executive Schedule, Senior Executive Service (SES), Senior Foreign Service (SFS), senior-level and scientific and professional (SL/ST), prevailing rate, and other Executive branch pay systems and schedules. Additional information on employees covered by the pay freeze is provided in Attachment 3.

**Covered Pay Adjustments**

The pay freeze statute prohibits "statutory pay adjustments" for Federal civilian employees that would otherwise take effect in 2011 and 2012. These statutory pay adjustments include across-the-board adjustments under 5 U.S.C. 5303, locality pay adjustments under 5 U.S.C. 5304 or 5304a, Executive Schedule adjustments under 5 U.S.C. 5318, prevailing rate adjustments under 5 U.S.C. 5343(a), and any similar pay adjustments required by statute with respect to covered employees in an Executive agency. In addition, the statute prohibits certain additional pay adjustments for SES, SFS, SL/ST, and other senior executive and senior-level employees. The Presidential memorandum further states that agencies should forgo similar pay system and pay schedule adjustments and general increases that could otherwise be granted by an agency to employees through administrative discretion. Additional information on pay adjustments covered by the pay freeze is provided in Attachment 3.

**Pay Freeze Exclusions**

Given the breadth of the statute and the Presidential memorandum, virtually all pay system and pay schedule adjustments and general increases for covered civilian employees in Executive branch agencies should be covered by the pay freeze. Pay adjustments not covered by the freeze include promotion increases, within-grade step increases, and other similar individually-based pay increases. (See Attachment 3 for additional guidance on exclusions.)

. . . .

**Effective Date**

> The statute and Presidential memorandum cover pay adjustments that would otherwise take effect during the period beginning on January 1, 2011, and ending on December 31, 2012.

Memorandum for Heads of Executive Departments and Agencies, <u>available at</u> http://www.chcoc.gov/transmittals/TransmittalDetails.aspx?TransmittalID=3384 (last visited April 28, 2015).  OPM further elaborated on which adjustments fall within the PFA in an attachment to the memo, stating:

> An adjustment is considered to be "required by statute" if a law mandates that a given type of adjustment be made (including a determination to provide a zero adjustment) based on the existence of specific conditions. This does not mean that a law must specify the exact amount of the adjustment.  Both General Schedule across-the-board increases and locality pay increases are required by statute based on specific conditions, but the governing laws leave room for determining the amount of the adjustment and allow for the determination of a zero increase.  Other pay systems may be governed by similar laws.

Memorandum for Heads of Executive Departments and Agencies, Attachment 3, <u>available at</u> http://archive.opm.gov/oca/compmemo/2010/2011freeze_attach3.pdf (last visited April 28, 2015).  Similarly, the Secretary of Defense issued a memorandum stating that no pay adjustment would be made.  Memorandum for Secretaries of The Military Departments, Def.'s App'x 44.

In January 2011, DoDEA contacted OPM by email for guidance regarding the application of the PFA to overseas teachers.  OPM replied with a determination that the pay adjustment for the 2010-2011 school year, which would be finalized in 2011 but had an effective date of August 1, 2010, would not be affected by the PFA.  Def.'s App'x 22. However, OPM determined that the following years' pay adjustments would be frozen by

the PFA, lasting until August 2013.  Id.[4]  Despite the freeze, OPM instructed DoDEA to
continue to perform wage surveys.  Id. at 42-43.

In 2013, Congress extended the pay freeze for another year as part of the
Consolidated and Further Continuing Appropriations Act, Pub. L. 113-6.  Id. at 46-47.  On
April 5, 2013, as before, the President issued a memorandum directing OPM to issue
guidance.  Id. at 47-48.  The Director of OPM issued the requested guidance on that same
day.  Id.  This guidance reaffirmed OPM's initial guidance.

Plaintiffs filed this case on April 22, 2014, and moved for summary judgment on
June 13, 2014.  The government filed its motion on October 27, 2014.  Briefing is complete
and oral argument was held on April 23, 2015.

## II.    STANDARD OF REVIEW

Both parties have moved for summary judgment under Rule 56 of the Rules of the
United States Court of Federal Claims ("RCFC").  Under RCFC 56, summary judgment is
appropriate "if the movant shows that there is no genuine dispute as to any material fact

---

[4] In the email providing guidance, OPM stated:

> We have determined that the pay freeze does not apply to pay increases for these
> teachers that take effect in August 2010, since those increases are required to take
> effect prior to the pay freeze period.

> However, those teachers may not receive schedule increases during the 2011-
> 2012 pay freeze period.  Thus, the August 2011 and August 2012 increases would
> be blocked.  We believe it would be appropriate as a matter of policy for pay
> increases to be blocked until August 2013 so that these teachers are subject to a
> full 2-year freeze.

Def.'s App'x 22, Email from Jerry Mikowicz, Deputy Associate Director, Pay and Leave, OPM,
to Darryl E. Roberts (Feb. 14, 2011, 11:09 EST).

and the movant is entitled to judgment as a matter of law." RCFC 56(a).  The court's task is to determine whether there exists a genuine issue of material fact for trial, and not "to weigh the evidence and determine the truth of the matter . . . ." Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).  As it does for all Rule 56 motions, the court views the evidence in a light most favorable to the nonmoving party, drawing reasonable inferences in its favor.  See Schooner Harbor Ventures, Inc. v. United States, 569 F.3d 1359, 1362 (Fed. Cir. 2009); Galvin v. Eli Lilly & Co., 488 F.3d 1026, 1031 (D.C. Cir. 2007).  If the court finds that a rational trier of fact could not find for the nonmoving party, then there is no genuine issue for trial and the movant is entitled to summary judgment. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.   DISCUSSION

### A.   OPM Properly Determined That Agencies Should Apply the PFA Broadly To Include Salaries Set Under the OTPPPA

According to plaintiffs, the PFA was not sufficiently broad to override the OTPPPA.  Plaintiffs argue that the PFA specifically lists several statutes, not including the OTPPPA, and that the OTPPPA is not sufficiently "similar" to those statutes to have been included within the ambit of the PFA.  Plaintiffs contend that the statutes identified in the PFA all include some element of administrative discretion in granting a pay increase, while the OTPPPA's use of the word "shall" creates a mandatory duty that places it outside the PFA.  In support of this contention, plaintiffs argue that there is a presumption that appropriations acts do not change substantive law, citing Building and

Construction Trades Dep't, AFL-CIO v. Martin, 961 F.2d 269, 273 (D.C. Cir. 1992), and

that clause 3(f)(i) of the Rules of the House of Representatives for the 111th Congress

require that any new legislation must specifically identify the existing statutes that it

changes.  Plaintiffs argue that Congress's actions are still meaningful with the reading

they propose and have identified several pay statutes that plaintiffs believe would still fall

within the PFA's ambit under this interpretation, including 5 U.S.C. § 5348, which covers

Federal mariners, and 5 U.S.C. § 5349, which covers employees of the Government

Printing Office and the Bureau of Engraving and Printing.

In addition to their statutory argument, plaintiffs also argue in their brief that

OPM's decision to include teachers covered by the OTPPPA within the pay freeze should

not be given any deference because it was not done through a formal rulemaking, citing

Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984).

To the extent that deference is also available to OPM under Skidmore v. Swift & Co.,

323 U.S. 134 (1944), plaintiffs argue that any ambiguity must be resolved in favor of

plaintiffs.  Plaintiffs further note that the domestic teachers in DoDEA schools[5] received

pay increases, and argue that it would be paradoxical for overseas teachers to be treated

differently from their domestic counterparts. While plaintiffs recognize that pay increases

for domestic teachers are covered by a collective-bargaining agreement ("CBA"),

plaintiffs argue that nothing in the PFA exempts CBAs from the pay freeze.  In this

---

[5] Domestic teachers in DoDEA schools are not the domestic teachers referred to in the OTPPPA,
but rather DoDEA teachers at schools in the United States.  As discussed below, infra note 9,
their pay statutes operate independently.

connection, plaintiffs argue that OTPPPA was passed to ensure that overseas teachers received pay parity with their domestic counterparts, and that nothing in the PFA indicates an intention to undermine Congress's prior specifically-stated intentions.

In response, the government argues that Congress clearly stated an intention for the PFA to apply as broadly as possible.  According to the government, because Congress has the authority to pass pay freezes, the question in this case is one of whether they intended to include teachers covered by the OTPPPA rather than whether Congress had the authority to freeze their wages.  The government argues that the plain language of the PFA supports a finding that the pay freeze was to be applied to all executive branch employees unless expressly exempted, and overseas teachers—covered by the OTPPPA as executive branch employees—were subject to statutory pay adjustments and therefore covered by the PFA.  Specifically, the government contends that the language in § 147(b)(2) specifying that the PFA shall apply "notwithstanding" other provisions of law makes the broad scope of the PFA clear, as it expressly disallows statutory pay increases during the specified period.  The government further contends that the language in the PFA regarding any statute that provides for a "similar" adjustment further demonstrates the broad scope of the PFA.

To the extent that the PFA was ambiguous with regard to scope, the government argues that Congress explicitly delegated interpretative authority to the President to find "similar" statutes and to apply the pay freeze to those executive branch employees.  In this connection, the government also argues that OPM's interpretation of the PFA on behalf of the President is entitled to deference as an agency interpretation under

Skidmore, stating that it is appropriate in light of OPM's expertise, authorized by the statute, and a reasonable interpretation.  The government further argues that plaintiffs' arguments regarding pay parity with domestic DoDEA teachers must be rejected because domestic teachers are covered by a CBA and are therefore treated differently under the PFA.

The court agrees with the government that the plaintiffs were covered by the PFA and thus subject to the pay freeze.  As an initial matter, the court agrees with the government that it must give deference to OPM's guidance under Skidmore.  In Skidmore, the Supreme Court created a standard deferring to the experience and judgment of administrators, stating:

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

Skidmore, 323 U.S. at 140.  The Supreme Court has reaffirmed that Skidmore deference is still available post-Chevron.  United States v. Mead Corp., 533 U.S. 218, 234 (2001) ("Chevron did nothing to eliminate Skidmore's holding that an agency's interpretation may merit some deference whatever its form . . . ." (citations omitted)).  The court finds that the term "similar" is not self-defining, leaving the specific classification of pay

adjustment statutes as falling within the PFA to OPM.[6]  Without a definition by

Congress, the similarity of two pay statutes is necessarily subjective, making such a

determination an appropriate task for an agency that is entitled to deference.[7]  The court

further agrees with the government that Congress's explicit delegation of decision-

making authority to OPM entitles the agency's guidance proferred pursuant to that

authority to receive deference.

In accordance with the deference afforded to OPM, the court finds OPM's

interpretation of the PFA is persuasive.  Under the PFA, a statutory pay adjustment is

defined as either "an adjustment required under section 5303, 5304, 5304a, 5318, or

5343(a) of title 5, United States Code" or "any similar adjustment, required by statute,

with respect to employees in an Executive agency."  Pub. L. No. 111-322 § 147(b), 124

Stat. 3518.  The five enumerated statutes all deal with adjustments to employees covered

by the pay comparability system (including the General Schedule) and the prevailing rate

system.  See 5 U.S.C. §§ 5303, 5304, 5304a, 5318, 5343(a).  As long as the OTPPPA

---

[6] Plaintiffs argue that any ambiguity in the statute requires a finding in favor of plaintiffs, as
appropriations statutes are required by Congressional rules to state the statutes to be affected
with specificity.  However, the court finds this argument unpersuasive.  See infra, note 10.

[7] Plaintiffs argue that the guidance offered by OPM lacks the indicia of careful consideration
required to receive deference, citing Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d
1352 (Fed. Cir. 2005).  The government relies on the same case to argue that OPM is the agency
with the expertise most germane to the issue of pay freezes on pay adjustments and thus must be
given deference.  In that case, the Federal Circuit described Skidmore not as a threshold test but
as a standard that "requires courts to give some deference to informal agency interpretations of
ambiguous statutory dictates, with the degree of deference depending on the circumstances."
Cathedral Candle, 400 F.3d at 1365.  Under this approach, the court finds that OPM's guidance
is entitled to deference because OPM is the agency with relevant expertise.

reasonably fits the description in § 147(b)(2) of a statute providing a "similar

adjustment," teachers paid in accordance with the OTPPPA were covered by the pay

freeze.  Regarding such adjustments, OPM stated:

> An adjustment is considered to be "required by statute" if a law mandates
> that a given type of adjustment be made (including a determination to
> provide a zero adjustment) based on the existence of specific conditions.
> This does not mean that a law must specify the exact amount of the
> adjustment.  Both General Schedule across-the-board increases and locality
> pay increases are required by statute based on specific conditions, but the
> governing laws leave room for determining the amount of the adjustment
> and allow for the determination of a zero increase.  Other pay systems may
> be governed by similar laws.

Memorandum for Heads of Executive Departments and Agencies, Attachment 3,

available at http://archive.opm.gov/oca/compmemo/2010/2011freeze_attach3.pdf (last

visited April 28, 2015).  Regarding the DoDEA overseas teachers specifically, OPM

stated, in response to an inquiry from DoDEA:

> We have reviewed the issues and consulted with OMB.  We have
> determined that the pay freeze does not apply to pay increases for these
> teachers that take effect in August 2010, since those increases are required
> to take effect prior to the pay freeze period.
>
> However, these teachers may not receive pay schedule increases during the
> 2011-2012 pay freeze period.  Thus, the August 2011 and August 2012
> increases would be blocked.  We believe it would be appropriate as a matter
> of policy for pay increases to be blocked until August 2013 so that these
> teachers are subject to a full 2-year freeze.

Def.'s App'x 22, Email from Jerry Mikowicz, Deputy Associate Director, Pay and Leave,

OPM, to Darryl E. Roberts (Feb. 14, 2011, 11:09 EST) ("Mikowicz Email").

Plaintiffs argue that the OTPPPA is not "similar" because it does not provide for a

statutory pay adjustment, but rather requires that teacher pay be set to maintain parity

with domestic school districts of more than 100,000 population. Plaintiffs further argue that, whereas the five identified statutes all contain some discretionary element that permits the President to forgo a pay adjustment, the OTPPPA establishes a mandatory pay increase if the DoDEA evaluation establishes that one is required.  In support of their position, plaintiffs point to the statutes used to set wages for Federal mariners, 5 U.S.C. § 5348, and for employees of the Government Printing Office and Bureau of Engraving and Printing, id. at § 5349, as examples of statutes that would be considered "similar" to the five identified in the PFA.  Plaintiffs state that these pay statutes are more similar, procedurally, to those in the PFA than the OTPPPA is, showing that a narrower interpretation of the statute is possible.

The government argues that plaintiffs' interpretation of § 147(b)(2) is overly narrow. The government contends that a "similar" provision need not be one that functions in the same precise procedural manner as the five identified statutes, but can instead refer to statutes that control pay adjustments in general, which do not mandate a pre-determined pay increase but rather contemplate that pay may be increased if an evaluation determined that one is required.  The government, relying on Cisneros v. Alpine Ridge Group, 508 U.S. 10 (1993), argues that Congress's use of the phrase "notwithstanding any other provision of law" evinces an intent by Congress to include all but the expressly exempted Federal employees from coverage under the provision. According to the government, the OTPPPA falls within the ambit of the PFA as a "similar" statute because the OTPPPA is a pay setting statute.

Based on the plain text of the PFA, the court finds that OPM's conclusion that the OTPPPA falls within the ambit of the PFA is both supported and persuasive.  First, there is nothing in the PFA that limits "similar" pay adjustment statutes to those that implement pay adjustments by the same procedures as the identified statutes, and nothing that limits "similar" statutes to those that provide discretion to the President.[8]  Instead, the PFA refers to "any similar adjustment, required by statute, with respect to employees in an Executive agency."  Thus, Congress specified two criteria for determining similarity: (1) the adjustment applies to employees of the executive branch, and (2) the adjustment is made following a statutory process that may or may not result in a pay increase.  The first element is undisputed in this case, and the "required by statute" element does not appear to be disputed, either.  In such circumstances, the court finds that OPM's guidance is consistent with the PFA and is entitled to deference.[9]  While the plaintiffs may have

---

[8] Plaintiffs argue that the statutes set forth in the PFA all contain a discretionary element, while the OTPPPA requires that an adjustment be made.  However, nothing in the OTPPPA requires an annual adjustment to have a non-zero value, and no increase is guaranteed.  If the wage survey were to find that pay had held constant in the representative districts or had declined, the language of OTPPPA requires a zero or negative adjustment, respectively.  As a result, the court finds that the mandatory aspect of OTPPPA does not distinguish it, in the context of the PFA, from statutes in which the President may choose to impose a zero increase.  See Memorandum for Heads of Executive Departments and Agencies, Attachment 3, available at http://archive.opm.gov/oca/compmemo/2010/2011freeze_attach3.pdf (last visited April 28, 2015) ("An adjustment is considered to be 'required by statute' if a law mandates that a given type of adjustment be made (including a determination to provide a zero adjustment) based on the existence of specific conditions.  This does not mean that a law must specify the exact amount of the adjustment.").

[9] Plaintiffs argue that it would be unfair for domestic DoDEA teachers to receive pay adjustments while overseas teachers are subject to a pay freeze.  However, the salaries of domestic teachers are set pursuant to a separate statute, 10 U.S.C. § 2164, which does not reference overseas teachers.  Further, OPM properly determined that the pay freeze did not apply to domestic teachers because it could not alter the CBA that covers those teachers.  Accordingly,

preferred a different reading of the PFA, OPM's reading is consistent with the PFA and Congressional intent and will be upheld.[10]

Accordingly, the court finds that the government is entitled to summary judgment on plaintiff's claims regarding the application of the PFA to overseas teachers.

### B.    DoDEA Erred in Applying the Pay Freeze After December 31, 2013

Regardless of whether teachers paid under the OTPPPA are subject to a pay freeze under the PFA, plaintiffs argue that the decision to apply the PFA past December 31, 2013 was contrary to law. Specifically, plaintiffs argue that, because the PFA stated that "no statutory pay adjustment which would otherwise take effect during the period beginning on January 1, 2011 and ending on December 31, [2013], shall be made," DoDEA's adjustment of pay rates for the 2013-2014 school year, which was determined in April 2014 and called for an increase under the process described above, should have

---

the pay of domestic teachers and the application of the PFA to that pay is entirely distinguishable from that of the overseas teachers at issue here.

[10] Plaintiffs' arguments regarding Congress' failure to abide by House of Representative rules and the general presumption that appropriations acts do not alter substantive legislation is without merit. While "repeals by implication are not favored, . . . with especial force when the provision advanced as the repealing measure was enacted in an appropriations bill," Congress is authorized to do so when it clearly expresses its intention. United States v. Will, 449 U.S. 200, 221-22 (1980) (citations omitted). Indeed, the Supreme Court found in Will—in circumstances similarly involving pay increases—that "Congress intended to repeal or postpone previously authorized [salary] increases" where it stated that the increase "'shall not take effect.'" Id. at 222 (citing Pub. L. 95-66, 91 Stat. 270). Such language appears in the PFA. Additionally, because Congress expressly included "similar" statutes, the fact that it did not specifically refer to the OTPPPA is irrelevant. Further, because the PFA applied "notwithstanding" the OTPPPA, plaintiffs' arguments regarding legislative history of the OTPPPA are also irrelevant. E.g. Conyers v. Merit Systems Protection Board, 388 F.3d 1380, 1382-83 (2004), reh'g and reh'g en banc denied (2004) ("The language '[n]otwithstanding any other provision of law' signals that this . . . provision is to override more general conflicting statutory provisions to the extent that they would apply . . . ." (quoting Cisneros, 508 U.S. at 18)).

been paid following the expiration of the PFA pay freeze on December 31, 2013.  In

response, the government argues that, because OPM determined that the pay rates for the

2010-2011 would not be covered by the PFA because the beginning of the pay freeze fell

in the middle of the school year, it was necessary for DoDEA to stagger the end of the

pay freeze to achieve the requirements of the PFA which was intended to cover three full

years.

The court finds that the decision to apply the pay freeze for overseas teachers after

the period set by law was improper.  As OPM stated in its initial guidance,

> The pay freeze for all covered employees and pay adjustments described
> below is in effect for the period beginning on January 1, 2011, and ending
> on December 31, [2013].  The freeze applies to covered adjustments that
> would otherwise take effect during this period.

Memorandum for Heads of Executive Departments and Agencies, Attachment 3,

available at http://archive.opm.gov/oca/compmemo/2010/2011freeze_attach3.pdf (last

visited April 28, 2015).  Thus, OPM's guidance indicates that the freeze was effective

only during the calendar years of 2011, 2012, and—following the extension—2013.

Nothing in the statute requires a pay freeze to last a full 3 years; instead, the PFA sets a

time period during which the freeze is effective.  As there is no statutory requirement

under the OTPPPA that DoDEA salary adjustments may only "take effect" in August, the

pay freeze only prevented an adjustment from taking effect until the freeze expired on

December 31, 2013.  Congress explicitly limited the period of the freeze, and continuing

the freeze beyond the dates provided by law is inconsistent with the plain language of the

PFA.  While OPM stated in its later guidance to DoDEA that "[w]e believe it would be

appropriate as a matter of policy for pay increase to be blocked until August 2013 so that these teachers are subject to a full 2-year freeze," Mikowicz Email, a policy suggestion is not an interpretation of the PFA and is therefore not entitled to deference.  Moreover, as such a policy would extend the freeze beyond the statutorily-imposed deadline, the court finds that it is contrary to the plain meaning of the PFA.  In such circumstances, OPM's interpretation is not entitled to deference.  Chevron, 467 U.S. 837 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").  Accordingly, DoDEA erred in applying the pay freeze beyond the December 31, 2013 statutory deadline set by the PFA.[11]

## IV.    CONCLUSION

For the reasons set forth above, the government's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and plaintiffs' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  The parties shall file a status report by **May 8, 2015** setting forth a schedule for resolving damages in this case.

---

[11] At oral argument, the government discussed two cases which it argued permit DoDEA to continue the pay freeze following its statutory expiration.  In the first, the Supreme Court held that the Commissioner of Social Security could assign retiree benefits to operators in the coal industry even after the deadline specified by the animating statute.  Barnhart v. Peabody Coal Co., 537 U.S. 149, 153 (2003).  In the second, the Supreme Court held that the Secretary of Labor could recover misused funds even once 120 days had passed since a complaint alleging such misuse had been filed.  Brock v. Pierce County, 476 U.S. 253, 266 (1986).  These cases are distinguishable from the present case, as both deal with circumstances in which Congress obligated the agency to act.  In this case, however, Congress did not require action but rather prohibited action.  As a result, the incentive that the Supreme Court recognized to spur action, id. at 265 ("The 120-day provision was clearly intended to spur the Secretary to action, not to limit the scope of his authority."), is not present in this case.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge